```
 1                  UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF NORTH CAROLINA
 2                       WESTERN DIVISION

 3

 4   UNITED STATES OF AMERICA,-   Docket No. 5:20-cr-341-FL-1
                             -
 5       Plaintiff,          -   New Bern, North Carolina
                             -   December 16, 2021
 6           v.              -   Sentencing
                             -
 7   RICHARD RUBALACAVA,     -
                             -
 8       Defendant.          -
     -------------------------------

 9
                     TRANSCRIPT OF SENTENCING HEARING
10           BEFORE THE HONORABLE LOUISE WOOD FLANAGAN
                    UNITED STATES DISTRICT JUDGE.
11
     APPEARANCES:
12
     For the Plaintiffs:  United States Attorneys' Office
13                        By: Susan B. Menzer
                          150 Fayetteville Street, Suite 2100
14                        Raleigh, NC 27601
                          (919) 856-4500
15
     For the Defendant:  Federal Public Defender
16                        By: Edward D. Gray
                          150 Fayetteville St., Suite 450
17                        Raleigh, NC 27611-5967
                          (919) 856-4236
18
     Court Reporter:      Tracy L. McGurk, RMR, CRR
19                        413 Middle St.
                          New Bern, NC 28560
20                        (419) 392-6626

21

22
     Proceedings recorded by mechanical stenography,
23   transcript produced by notereading.

24

25
```

|  | 1 | (Commenced at 2:15 p.m.) |
|--|---|--|
|  | 2 | THE COURT: Are you Richard -- do you need |
| 00:00:04 | 3 | some time, counsel? |
| 00:00:07 | 4 | MR. GRAY: Your Honor, just to remind him to |
| 00:00:09 | 5 | speak into the microphone. |
| 00:00:11 | 6 | THE COURT: I can cover that. Keep your |
| 00:00:13 | 7 | mask on, over your nose too. |
| 00:00:16 | 8 | My name is Judge Flanagan. This is the time |
| 00:00:18 | 9 | the Court has set aside to sentence you for |
| 00:00:23 | 10 | participating in that riot in Raleigh. |
| 00:00:30 | 11 | I usually am spoken to by people who stand |
| 00:00:34 | 12 | up when they're addressing the Court, but because of |
| 00:00:37 | 13 | COVID, the fact that we're all having to talk to each |
| 00:00:41 | 14 | other through these masks, stay seated, keep that |
| 00:00:44 | 15 | microphone front and center. And the counsel will |
| 00:00:47 | 16 | benefit from this too. The orientation of the |
| 00:00:50 | 17 | microphone, we've learned, really is very important, Mr. |
| 00:00:52 | 18 | Gray. It's got to be kind of pulled towards you and |
| 00:00:56 | 19 | centered. But if you have trouble communicating, I'll |
| 00:01:02 | 20 | address it and try to fix it. |
| 00:01:04 | 21 | So the crime is maliciously damaging |
| 00:01:12 | 22 | property by means of fire. |
| 00:01:16 | 23 | Have you read the presentence report, sir? |
| 00:01:20 | 24 | THE DEFENDANT: Yes. |
| 00:01:20 | 25 | THE COURT: Good. Have you had enough time |

00:01:22    1    to talk with Mr. Gray so that you feel ready today to be

00:01:26    2    sentenced?

00:01:26    3              THE DEFENDANT:  Yes.

00:01:27    4              THE COURT:  All right.  Going forward then,

00:01:32    5    there were some very sad events that unfolded.  Many

00:01:41    6    people were hurt; property was destroyed needlessly in

00:01:46    7    Raleigh in May of 2020.

00:01:49    8              You set a fire in the Budacai restaurant.

00:01:57    9    You stole the cash register as well.

00:02:01   10              And then you moved on to the General Dollar

00:02:03   11    or the Dollar General Express in Raleigh, and you set a

00:02:08   12    fire in there, destroyed the whole building.  $354,379

00:02:20   13    in damage is what's been estimated.

00:02:23   14              Then you moved on to your employer's

00:02:26   15    premises, Red Hat.  You removed your shirt and set it on

00:02:31   16    fire, but you extinguished it.

00:02:36   17              And when you were interviewed, you variously

00:02:39   18    gave some excuses about how you were threatened to take

00:02:42   19    the actions that I've described and bullied, but it

00:02:45   20    didn't appear to be true, as also discussed in the

00:02:51   21    presentence report.

00:02:52   22              Obviously your life for a significant part

00:02:58   23    of time played itself out in Alaska, and you collected a

00:03:06   24    lot of convictions there beginning at the age of 18:

00:03:10   25    trespassing, theft, violating release conditions,

00:03:16 1 escape, stealing a vehicle, giving false information,

00:03:22 2 theft, criminal mischief, disorderly conduct, illegal

00:03:30 3 use of a phone, threatened to blow up someone's

00:03:34 4 residence, escape, misconduct involving a controlled

00:03:39 5 substance, false information.

00:03:40 6 And then you moved on to Wake County, North

00:03:47 7 Carolina. At the age of 23 you began your contact with

00:03:50 8 the criminal justice system on this side of the country:

00:03:54 9 trespassing on a railroad, possession of marijuana

00:03:59 10 paraphernalia, possession of drug paraphernalia,

00:04:01 11 trespassing, financial card fraud, attempted financial

00:04:06 12 card theft.

00:04:12 13 So very unfortunately at the age of 27 you

00:04:14 14 come into this courtroom with 16 criminal history

00:04:18 15 points, and that puts you in the highest category,

00:04:21 16 that's a VI.

00:04:24 17 And there are all these other arrests on

00:04:26 18 your record that, again, put you in contact with the

00:04:29 19 criminal justice system, but they don't change that

00:04:31 20 score.

00:04:36 21 Your family background was difficult.

00:04:40 22 There's no getting around that, and I don't minimize

00:04:45 23 that for one moment. You were deprived of food, saw

00:04:58 24 your mother being beaten, only met your father once, and

00:05:06 25 left to care for -- well, that's not correct, but you

00:05:20   1   said you felt like you were not allowed to have a

00:05:23   2   childhood.

00:05:24   3                   THE DEFENDANT:  Yes.

00:05:29   4                   THE COURT:  And you were homeless for a

00:05:31   5   period of time.

00:05:36   6                   And you've had a mental competency

00:05:39   7   evaluation in this case, and you've been ruled

00:05:45   8   competent.

00:05:47   9                   You've been diagnosed with a borderline

00:05:49   10  personality disorder, borderline intellectual

00:05:53   11  functioning, cocaine use disorder, methamphetamine use

00:05:56   12  disorder, cannabis abuse disorder, unspecified

00:06:02   13  depressive disorder, attention deficit hyperactivity

00:06:06   14  disorder, and post-traumatic stress.  There have been

00:06:13   15  some attempts made by you to kill yourself, and you have

00:06:20   16  variously been in contact with mental health

00:06:24   17  professionals since the age of seven.

00:06:30   18                  Your drug use history is significant and

00:06:33   19  covers just about everything.

00:06:37   20                  And you don't have a high school diploma.

00:06:44   21  You felt like you were picked on, and you were

00:06:50   22  suspended.  And ultimately you just were disconnected

00:06:58   23  from high school education.

00:07:02   24                  You've got a very little bit of an

00:07:04   25  employment history.

| | | |
|---|---|---|
| 00:07:10 | 1 | And the total offense level, the probation |
| 00:07:13 | 2 | office thinks, is a 21. And this appears correct. |
| 00:07:17 | 3 | And so I'm advised to consider a sentence |
| 00:07:20 | 4 | somewhere between 77 to 96 months. By law I cannot |
| 00:07:26 | 5 | sentence you to less than five years in prison, and I |
| 00:07:30 | 6 | can't sentence you to more than 20 years in prison. |
| 00:07:34 | 7 | Your behavior can be supervised for three years. The |
| 00:07:38 | 8 | fine could be as much as a quarter of $1 million. And |
| 00:07:42 | 9 | there's the money that's owed because you burnt down the |
| 00:07:45 | 10 | dollar store, $354,379.22. And a $100 special |
| 00:07:55 | 11 | assessment. |
| 00:07:59 | 12 | And it's my duty to decide a sentence that's |
| 00:08:04 | 13 | going to fix this. And I find that duty very difficult |
| 00:08:09 | 14 | to discharge in this case. It's my duty to do the |
| 00:08:14 | 15 | following in fixing this: To take into consideration |
| 00:08:19 | 16 | your background and your history, the nature and |
| 00:08:22 | 17 | circumstances of the instant offense, the need to |
| 00:08:26 | 18 | discourage this type of conduct, to promote respect for |
| 00:08:30 | 19 | the law, to protect the public, and the need for |
| 00:08:35 | 20 | treatment. |
| 00:08:39 | 21 | And there's a compelling need for treatment, |
| 00:08:43 | 22 | and there's some deep-seated issues that you're going to |
| 00:08:49 | 23 | have with you for the rest of your life. |
| 00:08:53 | 24 | So, Mr. Gray, what do you think is a |
| 00:08:56 | 25 | sentence that does what it needs to do in this case? |

00:09:06  1          MR. GRAY:  Well, Your Honor, I certainly do

00:09:07  2  not envy the position of the Court when it comes to Mr.

00:09:11  3  Rubalacava, because unfortunately Mr. Rubalacava is the

00:09:16  4  example of what takes place when there is that

00:09:18  5  intersection between the need for a mental health system

00:09:22  6  to help those like Mr. Rubalacava, but there is none

00:09:25  7  around.  And unfortunately it looks as though the desire

00:09:29  8  is to place folks like Mr. Rubalacava into perpetual

00:09:35  9  incarceration.  And unfortunately, Your Honor, that's

00:09:41  10  not due to Mr. Rubalacava and his background.

00:09:44  11          The Court is more than aware of his history,

00:09:48  12  the fact that he has 17 paragraphs of criminal

00:09:52  13  convictions, not including other interactions with the

00:09:57  14  Court.  But it's pretty clear that the basis for all of

00:09:59  15  that interaction, these criminal convictions, is truly

00:10:03  16  an issue that resolves within the issue of his mental

00:10:09  17  health.

00:10:09  18          Mr. Rubalacava, as the Court has noted, has

00:10:13  19  had at least one evaluation by the Federal Bureau of

00:10:18  20  Prisons, an evaluation done by an expert that we

00:10:21  21  provided, and all of those point to the same issues,

00:10:24  22  which is Mr. Rubalacava has a host of issues involving

00:10:28  23  mental health that ultimately need to be addressed.

00:10:32  24          We'll cite the Dr. Ross report because Dr.

00:10:35  25  Ross as well as Dr. Hilkey both have made the finding

| | | |
|---|---|---|
| 00:10:39 | 1 | that it's not an issue beyond resolution.  And I think |
| 00:10:42 | 2 | that is the bright spot within Mr. Rubalacava's case. |
| 00:10:46 | 3 | Mr. Rubalacava is not a mean-spirited |
| 00:10:49 | 4 | person.  He is not a person who is acting for the sake |
| 00:10:52 | 5 | of trying to just take money and things of that nature. |
| 00:10:56 | 6 | Unfortunately, Your Honor, when he was arrested for |
| 00:10:59 | 7 | these events that took place during the course of the |
| 00:11:01 | 8 | protest, he was aligning himself with those who wanted |
| 00:11:07 | 9 | to do other things during the course of that protest. |
| 00:11:10 | 10 | He is caught up into the spirit of many people who are |
| 00:11:15 | 11 | trying to do bad, and he got caught up in that.  A lot |
| 00:11:19 | 12 | of that is because of how he has -- his mental health |
| 00:11:22 | 13 | issues to essentially make him a little bit more |
| 00:11:29 | 14 | susceptible to that kind of treatment. |
| 00:11:31 | 15 | But, Your Honor, when we look at what took |
| 00:11:33 | 16 | place that night, it all began when Mr. Rubalacava tried |
| 00:11:36 | 17 | to set a green plant leaf on fire in the Budacai |
| 00:11:44 | 18 | restaurant.  This isn't a plant that was going to catch |
| 00:11:47 | 19 | on fire, the video showed did not catch on fire.  Mr. |
| 00:11:51 | 20 | Rubalacava left.  He was told to go back in and take |
| 00:11:54 | 21 | some stuff.  We see that as a repeated trend throughout |
| 00:11:58 | 22 | that night; he's coerced into making things happen.  And |
| 00:12:01 | 23 | he's not doing this because he isn't aware of what he's |
| 00:12:04 | 24 | doing; he clearly knows what he's doing.  But I think it |
| 00:12:07 | 25 | just shows a level of susceptibility that a person in |

00:12:10 1  his mind set has with regard to these sort of

00:12:13 2  activities.  And it's clear this is something that's

00:12:15 3  been a component of his life for at least since he was

00:12:19 4  seven.

00:12:20 5          Unfortunately, some of these issues are

00:12:23 6  related to physical.  He did have a television that fell

00:12:26 7  on his head.  The environment; he was raised in an

00:12:31 8  environment that was less than idyllic, including

00:12:34 9  physical abuse.  He also has a number of intellectual

00:12:40 10  deficits that unfortunately compound a lot of the

00:12:43 11  problems; he has difficulty reading.  We spent a lot of

00:12:47 12  time walking through and reading documents to Mr.

00:12:50 13  Rubalacava because that's the sort of assistance that he

00:12:52 14  needs.  He ultimately can and does understand what's

00:12:55 15  going on, Your Honor, so he is not at the point where he

00:12:58 16  doesn't understand what's going on.  But I do think it's

00:13:01 17  important for the Court to understand that a lot of

00:13:03 18  what's going on as to why this is happening results from

00:13:08 19  his mental difficulties as well as his background and,

00:13:12 20  more importantly, the help that he needs.

00:13:15 21          Mr. Rubalacava can be helped.  Dr. Ross and

00:13:20 22  Dr. Hilkey note in their report that when he's medicated

00:13:24 23  and he's given a structured environment, he does tend to

00:13:28 24  thrive.  When he was at FMC Butner for the course of

00:13:31 25  this evaluation, Richard was given the opportunity to be

00:13:34  1  an assistant and help with those that were at the FMC

00:13:40  2  that needed additional care.  It was while he was acting

00:13:42  3  in that role that he ultimately thrived.  It gave him a

00:13:46  4  job; it gave him responsibility; it gave him a chance to

00:13:48  5  exercise his ability to care and nurture.

00:13:51  6          THE COURT:  What's that type of job called?

00:13:53  7  Are you an orderly?

00:13:55  8          MR. GRAY:  An orderly, Your Honor.  He's an

00:13:57  9  orderly.  I think the official term is "custodian" at

00:13:59  10  that level, but he is an orderly to help out with those

00:14:03  11  who are in the unit.

00:14:08  12          We note this, Your Honor, because I think

00:14:09  13  when we look at the question of Mr. Rubalacava, his

00:14:11  14  history is one where if we just continually incarcerate

00:14:15  15  him and keep him behind bars for the rest of his life, I

00:14:19  16  don't think we're doing him a service, nor do I feel

00:14:22  17  that we're fulfilling the obligations under 3553(a).

00:14:25  18  However, we can help give him the structure and the

00:14:28  19  medication that he needs while he's in custody.

00:14:30  20          So we would ask, Your Honor, for -- while

00:14:34  21  he's being placed, we would like to have vocational

00:14:36  22  training as well as educational training for him so that

00:14:39  23  he can build the skills and be able to help provide for

00:14:43  24  himself.  Before this all took place, Mr. Rubalacava was

00:14:46  25  homeless.  He was out on the streets.  As he was

00:14:50  1  homeless and without a lot of ability to help take care
00:14:52  2  of himself, he ended up using a lot of drugs.  And drugs
00:14:55  3  has been something he's been doing in order to help deal
00:14:57  4  with the issues he has.
00:14:59  5          THE COURT:  Can you give me some insight on
00:15:01  6  why he went from Alaska to Raleigh?
00:15:06  7          MR. GRAY:  Yes, Your Honor.  So his father
00:15:07  8  was stationed -- was in the Air Force, and he was
00:15:09  9  stationed up Eielson Air Force base in Alaska.  Because
00:15:14  10  of his father's assignment, he was then sent back down
00:15:16  11  to Shaw Air Force base, which is in South Carolina.
00:15:19  12  That's where his family resides, near Rock Hill.  He
00:15:23  13  left Rock Hill to come to Raleigh in an effort to try
00:15:27  14  to, one, get a little bit of a head start on himself.
00:15:30  15  But ultimately he was also thrown out by his family.
00:15:34  16  They had, I think, reached the end of where they felt
00:15:37  17  that they could continue to work with him.  Some of that
00:15:40  18  may have been due to the fact that he had fathered a
00:15:43  19  child.  Some of that also may have been due to Mr.
00:15:45  20  Rubalacava's desires to try to prove himself as being an
00:15:49  21  adult.
00:15:50  22          But I think it's consistent with the pattern
00:15:52  23  of what we've seen with Mr. Rubalacava, which is if he's
00:15:55  24  placed into an environment where he's given the
00:15:59  25  resources to thrive, he can do so.  But when he's left

|  |  |  |
|---|---|---|
| 00:16:02 | 1 | on his own and when he isn't given the support, he turns |
| 00:16:05 | 2 | to drugs as a way of medicating, and that ultimately |
| 00:16:09 | 3 | leads down the path towards criminality. |
| 00:16:12 | 4 | So, Your Honor, I think we can address a lot |
| 00:16:14 | 5 | of those things with mental health treatment. We would |
| 00:16:16 | 6 | ask for placement at FMC Butner because that was an area |
| 00:16:20 | 7 | where he did thrive, and they have the resources to help |
| 00:16:23 | 8 | provide him the care that he needs. As we cited in our |
| 00:16:26 | 9 | sentencing memo, unfortunately, Your Honor, a long |
| 00:16:29 | 10 | prison stay doesn't help him. What he really needs is |
| 00:16:33 | 11 | quick and ready access to medical care and mental care |
| 00:16:36 | 12 | so he can start to build that tool set. That's why we |
| 00:16:40 | 13 | remind the Court that in the reports Mr. Rubalacava is |
| 00:16:42 | 14 | not a lost cause. He can, in fact, build the skill set |
| 00:16:45 | 15 | so that he can thrive. But it will take time; it will |
| 00:16:48 | 16 | take effort, and it will take a structured environment, |
| 00:16:51 | 17 | which is why we would ask for the FMC. |
| 00:16:54 | 18 | Your Honor, based upon that, we would ask |
| 00:16:56 | 19 | that the Court consider a downward variance or departure |
| 00:16:59 | 20 | down to the statutory mandatory minimum of 60 months. |
| 00:17:03 | 21 | That will no doubt deter Mr. Rubalacava, also address |
| 00:17:09 | 22 | the issues with regard to general deterrence and actual |
| 00:17:11 | 23 | punishment for the crimes that he's committed, but it |
| 00:17:14 | 24 | would also give us an opportunity to get Mr. Rubalacava |
| 00:17:17 | 25 | into an environment where he can get the mental health |

00:17:20  1  treatment and continuing care that he needs sooner

00:17:22  2  rather than later.  So, Your Honor, we would ask for

00:17:25  3  those things.

00:17:26  4        I know Mr. Rubalacava has the desire to

00:17:28  5  speak to the Court and let you know a little bit about

00:17:30  6  who he is and what's moving him.  I'll just note, Your

00:17:36  7  Honor, for the record that Mr. Rubalacava has a number

00:17:39  8  of difficulties when it comes to speaking.  So if things

00:17:45  9  start to -- if he needs assistance, he's indicated he'll

00:17:49  10  let me know, and I might be able to pick up for him.

00:17:51  11  Thank you, Your Honor.

00:17:52  12        THE COURT:  Just one moment.  It looks like

00:18:01  13  in Alaska there were efforts to give him treatment, but

00:18:10  14  he kept escaping.  That's what it looks like.

00:18:20  15        MR. GRAY:  Your Honor, I think some of those

00:18:22  16  were also treatment related to the incarceration period.

00:18:24  17  But it -- a number of attempts at treatment were just

00:18:28  18  colocated with the jail system.

00:18:33  19        Some of his best and most profound elements

00:18:36  20  of movement were when he was at places like Holly Hill

00:18:40  21  Mental Health Hospital in Raleigh.  That was something

00:18:43  22  where while he's there, he's in a structured

00:18:46  23  environment.  The problem is once he gets out of that

00:18:48  24  environment and hasn't had a chance to acquire the skill

00:18:51  25  set, that's where we go off the rails.

|  |  |  |
|---|---|---|
| 00:18:55 | 1 | THE COURT: Well, let me hear from the |
| 00:18:57 | 2 | government, and then I'll turn my attention to the |
| 00:19:00 | 3 | defendant, and I'd like to hear from you. But let's |
| 00:19:04 | 4 | hear what the government has to say to the motion for a |
| 00:19:06 | 5 | downward departure or variance. |
| 00:19:09 | 6 | MS. MENZER: Thank you, Your Honor. Your |
| 00:19:10 | 7 | Honor, I think that would be highly inappropriate here. |
| 00:19:16 | 8 | The government is clearly sympathetic to the defendant's |
| 00:19:20 | 9 | history. It is clear here; there's two reports from |
| 00:19:24 | 10 | doctors who have all concluded that he does have serious |
| 00:19:27 | 11 | mental health issues. But at the same time, Your Honor, |
| 00:19:30 | 12 | he is a danger to the community. And I think the Court |
| 00:19:35 | 13 | noted it appropriately by saying that there has been |
| 00:19:39 | 14 | efforts made, numerous efforts made by the criminal |
| 00:19:42 | 15 | justice system to help him. And he does -- he escapes, |
| 00:19:47 | 16 | and he doesn't participate. So the specific reason for |
| 00:19:52 | 17 | the departure, I believe Mr. Gray has noted in his |
| 00:19:55 | 18 | sentencing memo, is his emotional and mental health |
| 00:19:59 | 19 | issues was one of them. One was his age, which I would |
| 00:20:01 | 20 | object, Your Honor. I think he's 27 years old. He's -- |
| 00:20:07 | 21 | I don't think his age is any -- particularly different |
| 00:20:11 | 22 | than other or similarly situated defendants in a federal |
| 00:20:14 | 23 | courtroom. So I think that would be an inappropriate |
| 00:20:16 | 24 | reason. But in terms of his mental health, I would note |
| 00:20:19 | 25 | for the Court that it's very sad that we have all read |

00:20:23 1  presentence reports that contain very similar sad

00:20:26 2  upbringings.  I think that his -- the efforts of the

00:20:31 3  criminal justice system to help him have not been

00:20:33 4  successful, but that was in part, based upon the PSR, it

00:20:37 5  seems in part due to his own fault.  His family, it

00:20:42 6  appears, tried to help him, and they've given up.  I

00:20:46 7  don't think that his particular mental health issues are

00:20:50 8  outside the heartland that you should depart from the

00:20:54 9  guidelines for that reason.

00:20:58 10          THE COURT:  So your recommendation to this

00:21:02 11  Court is a sentence somewhere in the range of 77 to 96

00:21:06 12  months?

00:21:07 13          MS. MENZER: Yes, Your Honor.  I would note,

00:21:08 14  if you'd like me to continue, Your Honor, I think the

00:21:11 15  most important thing here -- this wasn't my case

00:21:14 16  originally.  I didn't charge it.  And I spent a lot of

00:21:17 17  time over the last couple days reading newspaper

00:21:19 18  reports, reading police reports regarding everything

00:21:21 19  that happened during the riots.  We personally

00:21:24 20  experienced coming back down to Raleigh and seeing all

00:21:27 21  the destruction.

00:21:29 22          I understand that the defendant wasn't part

00:21:30 23  of the original protest, which was meant to be a

00:21:34 24  peaceful protest, and instead it turned into civil

00:21:37 25  unrest.  And the reports show that there were, I think,

00:21:41 1   six arsons that were started.  As you cited today, the

00:21:46 2   defendant was part of at least three of those, at least

00:21:50 3   three of the fires being set.

00:21:52 4           I think that we're still being told by

00:21:56 5   counsel that he was told to do these, that he was

00:21:59 6   coerced to do these things.  Your Honor, at some point

00:22:02 7   in time -- you know, he didn't just go into these stores

00:22:07 8   one time; he kept going back.  When the fires didn't

00:22:11 9   light, he lit something else.  When the plant didn't

00:22:14 10  light, he tried to light something else on fire in the

00:22:18 11  restaurant.  Then he moved on, as you said, to the

00:22:21 12  dollar store.  The dollar store luckily had sprinkler

00:22:26 13  systems.  So this is a very serious crime.  And the

00:22:28 14  sprinkler systems would extinguish the fire, then they

00:22:30 15  did it again.  It wasn't one of these one-off where

00:22:33 16  you've just, oh, gotten excited with everything that was

00:22:36 17  going on, there's a riot going on in downtown Raleigh.

00:22:40 18  It was repetitive over and over again.  He moved from

00:22:43 19  one building to the other.  He went from the dollar

00:22:46 20  store the Red Hat building.  He admitted that he was

00:22:48 21  also in the CVS, but he claimed he didn't do anything,

00:22:54 22  and there was no camera or video to show that he had, so

00:22:57 23  I can't say otherwise, Your Honor.  But he was not being

00:23:01 24  pulled into one store and told to do something.  So I

00:23:04 25  think that characterization is just not true.  I think

00:23:07  1   he was an active participant.

00:23:10  2            I understand, based upon the presentence

00:23:13  3   report, he claims that he was under the influence at the

00:23:16  4   time.  But his actions clearly show the Court -- which I

00:23:22  5   think is the most important part in what is so hard

00:23:25  6   about fashioning this sentence -- he is a danger.  If I

00:23:29  7   was downtown, which we were told not to go, and there

00:23:32  8   was a curfew set up, he's a person I would be afraid of,

00:23:37  9   Your Honor.

00:23:38  10           In fashioning a sentence, even if it means

00:23:41  11  he needs to be incarcerated, part of the Court's duty is

00:23:44  12  to protect society.  And his criminal history and his

00:23:50  13  actions on the weekend of May 30th show that his

00:23:56  14  incarceration is needed.  And it's a sad fact that he

00:24:01  15  has spent his entire adult life back and forth and back

00:24:06  16  and forth.

00:24:07  17           And the crimes here, Your Honor, you'll see

00:24:10  18  a lot of times when you can read into some of what's

00:24:13  19  going on, they don't seem like that significant of

00:24:16  20  crimes, I mean, but there are -- there are some

00:24:20  21  dangerous things in here.  He's had a gun before; he's

00:24:23  22  threatened people; he's unpredictable.  This is the type

00:24:28  23  of behavior he showed that night, that he wasn't there

00:24:32  24  for a peaceful protest.  He saw havoc going on, and he

00:24:37  25  chose to join in.

00:24:39 1         And the Court, in terms of the seriousness

00:24:46 2 of the offense, the crimes that happened that weekend

00:24:53 3 was not just property damage. Police officers were

00:24:57 4 hurt; cars were damaged. One fuels the other one. And

00:25:02 5 not to use a pun, Your Honor, when we're talking about

00:25:04 6 the arson, Your Honor, but that's what happened. And

00:25:07 7 they moved in crowds.

00:25:08 8         So I think the Court, one, needs to impose a

00:25:14 9 sentence that is sufficient not just to discourage him,

00:25:17 10 but anybody that would get -- take a lawful protest that

00:25:25 11 citizens are allowed to do and turn it into civil unrest

00:25:28 12 which caused millions and millions of dollars of damage

00:25:32 13 throughout the state. So I think for those reasons a

00:25:34 14 sentence within the guidelines is appropriate.

00:25:38 15         THE COURT: Thank you. Mr. Rubalacava, is

00:25:42 16 there anything you'd like me to know?

00:25:49 17         THE DEFENDANT: I wrote a speech. If I

00:25:51 18 could read it to you, I'd appreciate it.

00:25:53 19         THE COURT: Yes.

00:26:04 20         THE DEFENDANT: I would like to take this

00:26:05 21 opportunity to apologize to the people who I've hurt

00:26:08 22 emotionally and financially. Not a day has gone by I

00:26:18 23 haven't thought of my actions that day. I was in a bad

00:26:21 24 place in my life that day. I was homeless, off of my

00:26:23 25 medication, on drugs, away from my family.

00:26:27　1　　　　　These last months have been a wake-up call.

00:26:30　2　And honestly, it probably saved my life.

00:26:33　3　　　　　I stand before you now accepting my

00:26:37　4　responsibility for my actions.  I'm making no excuses,

00:26:41　5　only letting you know my situation.  I would also like

00:26:46　6　to say that my time will be spent working on myself and

00:26:50　7　becoming a better person.  I will spend my time, become

00:26:55　8　a better father to my son, a better son to my parents,

00:26:59　9　and a better brother to my sibling.

00:27:02　10　　　　　I hope you all can forgive me and that today

00:27:05　11　can be a step to move forward to build the foundation

00:27:14　12　and the rebuilding of my life and my recovery.

00:27:19　13　　　　　THE COURT:  Did you write that?

00:27:20　14　　　　　THE DEFENDANT:  Yes.

00:27:23　15　　　　　THE COURT:  Well, it's well thought out.  I

00:27:25　16　hope you can realize those ambitions.

00:27:31　17　　　　　What's so disturbing is this escalation of

00:27:36　18　conduct and the fact that -- the propensity that you

00:27:42　19　demonstrated in Raleigh, it feeds off of basically nine

00:27:51　20　years of your behavior where you demonstrated disrespect

00:27:58　21　for the property rights of others and for authority and

00:28:05　22　for people's efforts to help you, which is something I'm

00:28:11　23　thinking about with respect to your lawyer's arguments

00:28:16　24　about punishment.

00:28:18　25　　　　　But let's go back and let's look at 2012.

| | | |
|---|---|---|
| 00:28:22 | 1 | You trespassed, you steal a debit card, and you try to |
| 00:28:26 | 2 | steal a bicycle. |
| 00:28:27 | 3 | And the next month you're very young, and |
| 00:28:32 | 4 | you steal a car.  Then there's a protective order |
| 00:28:37 | 5 | against you -- well, you were 18 when the car theft took |
| 00:28:45 | 6 | place, and you were leading on, I suppose, two |
| 00:28:52 | 7 | 13-year-olds.  They were the young ones. |
| 00:28:55 | 8 | And somebody takes out a protective order |
| 00:28:58 | 9 | against you, and you go to their house, and you ring |
| 00:29:00 | 10 | their doorbell.  That's not respectful. |
| 00:29:06 | 11 | And then you escape from what appears to be |
| 00:29:09 | 12 | a treatment center, and then you steal a van.  And you |
| 00:29:17 | 13 | give the police a false name, and that's something |
| 00:29:20 | 14 | you've done several times.  And you didn't show any |
| 00:29:24 | 15 | respect for the terms of supervision.  And that's back |
| 00:29:29 | 16 | in 2012. |
| 00:29:31 | 17 | And then you steal from a J.C. Penney.  And |
| 00:29:35 | 18 | you come back the next week, and you engage in |
| 00:29:38 | 19 | disorderly behavior; you knock over three mannequins and |
| 00:29:43 | 20 | you damage them. |
| 00:29:45 | 21 | Just like, in a much smaller way, you go |
| 00:29:48 | 22 | into that restaurant, and you try to set the plant on |
| 00:29:51 | 23 | fire.  Just like you go in the Dollar Express and you |
| 00:29:57 | 24 | set a fire, and you're stealing. |
| 00:30:05 | 25 | Disrespect for your probation officer; you |

00:30:07  1   show up in 2015 with cocaine on your person.

00:30:14  2          And you're engaging in financial fraud, and

00:30:18  3   you're trespassing.

00:30:27  4          There is a real need to protect the public

00:30:29  5   from someone as erratic, irresponsible, and bent on

00:30:35  6   committing crime who's been resistant to efforts to

00:30:40  7   help.  And there's a compelling need to take into

00:30:44  8   consideration your mental health issues and your

00:30:51  9   upbringing that manifest themselves now.  But I don't

00:30:57 10   believe a sentence outside the guideline range is going

00:31:03 11   to accomplish all of the purposes of sentencing here.

00:31:08 12   You're not that young that you should get a break.

00:31:13 13   You've been doing this for almost a decade.  And you

00:31:21 14   know right from wrong.  And you're calculated and

00:31:28 15   devious.

00:31:33 16          A sentence of 85 months accomplishes the

00:31:36 17   purposes of sentencing.  That's going to protect the

00:31:39 18   public from you for a significant period.  That's going

00:31:45 19   to discourage you and others from highjacking a peaceful

00:31:55 20   protest and turning it into a feeding frenzy of

00:32:02 21   destruction.

00:32:10 22          And let's talk about treatment.  I will

00:32:12 23   recommend you to Butner, and I will recommend you for

00:32:17 24   mental health treatment, for further vocational training

00:32:29 25   and education.  And I'm going to recommend you for the

00:32:31 1 most intensive substance abuse treatment program, and I

00:32:35 2 hope you get in.  And I hope do you right.  And I hope

00:32:39 3 it helps.  I really do.  And I really hope the mental

00:32:43 4 health treatment helps.

00:32:46 5          Now, when you get out of prison you're going

00:32:48 6 to be supervised for three years.  You can't break any

00:32:51 7 law.  You can't possess a weapon or drugs.  Now, we have

00:32:56 8 some other mandatory conditions you'll have to comply

00:32:59 9 with, and we've got some standard ones.  Follow the

00:33:04 10 directions of your probation officer.  We all want you

00:33:08 11 to succeed.  You won't be able to live someplace that

00:33:16 12 hasn't been preapproved, but your officer is going to

00:33:18 13 help you find a place to live.  And you're going to have

00:33:22 14 to be truthful and honest when you deal with your

00:33:25 15 officer.  You're going to have to work.  And your

00:33:28 16 officer is going to help you with that.  So it's really

00:33:34 17 a blessing for you; take advantage of it.  Don't do what

00:33:39 18 you've done in the state system and show the disrespect

00:33:42 19 that you've done.

00:33:49 20          And there are some special conditions for

00:33:51 21 you:  mental health treatment, drug treatment and

00:33:58 22 detection, cooperating in the collection of DNA.  I want

00:34:04 23 you to provide regular reports to your probation officer

00:34:07 24 about your efforts to get a job, keep a job.  I don't

00:34:10 25 want you to use alcohol, go to bars; I don't want you to

00:34:15 1  be around people that are drinking.  You'll submit to a

00:34:20 2  search at any time with or without a warrant and by any

00:34:25 3  law enforcement or probation officer of your person,

00:34:27 4  your property, your papers, your computer or other

00:34:31 5  electronic communication or storage device upon

00:34:36 6  reasonable suspicion concerning a violation of a

00:34:40 7  condition of supervised release or unlawful activity, or

00:34:44 8  by any probation officer in the lawful discharge of that

00:34:48 9  officer's supervisory functions.

00:34:54 10          And you'll make restitution -- it's a lot of

00:34:58 11  money -- in the amount of $354,379.22.  And that's owed

00:35:07 12  to the Dollar General Express.  I'm not going to put

00:35:11 13  interest on it.  You'll pay it through the Inmate

00:35:17 14  Financial Responsibility Program at the drib and drab of

00:35:21 15  $25 a quarter.  And when you get out of prison I'll give

00:35:24 16  you 60 days to get settled, then let's start paying it

00:35:27 17  back at the rate of at least $50 a month.  If your

00:35:33 18  probation officer thinks you can do more or need to do

00:35:35 19  less, the officer has the authority to change that.

00:35:39 20          You need to support your dependent as well.

00:35:44 21          So you've got these money obligations; you

00:35:46 22  can't open up new lines of credit or undertake charges

00:35:51 23  unless you have the permission of your probation

00:35:53 24  officer.  And you have to provide your officer financial

00:35:58 25  information like pay stubs, bank account records, that

00:36:03  1   kind of information when your officer requests.  And

00:36:08  2   this is all related to the nature of the instant

00:36:10  3   offense, your background and your history, and the need

00:36:13  4   to effectively supervise you.

00:36:19  5            No fine.

00:36:25  6            All right.  Is there anything else, Mr.

00:36:27  7   Gray, that I haven't already considered?

00:36:33  8            MR. GRAY:  Your Honor, just to make it as a

00:36:37  9   clear recommendation, we are asking for a recommendation

00:36:40  10  for the Federal Medical Center at Butner as opposed to

00:36:43  11  one of the other two locations.  We're just making that

00:36:47  12  as the recommendation.  We understand the BOP ultimately

00:36:51  13  will have to make that assessment, but that's what we're

00:36:54  14  requesting.

00:36:57  15           THE COURT:  The basis being the mental

00:37:00  16  health issues?

00:37:01  17           MR. GRAY:  Yes, Your Honor, the mental

00:37:02  18  health issues as evaluated and determined by the folks

00:37:05  19  who did the evaluation at the Mental Health Center there

00:37:08  20  at Butner.

00:37:08  21           THE COURT:  All right.  I will expressly

00:37:11  22  recommend the Federal Medical Center at Butner in the

00:37:16  23  judgment.

00:37:16  24           MR. GRAY:  Thank you, Your Honor.

00:37:16  25           THE COURT:  You're welcome.

00:37:17  1                    Anything from the government?

00:37:18  2                    MS. MENZER:  No, Your Honor.  Thank you.

00:37:20  3                    THE COURT:  And the other count against you

00:37:21  4     is now dismissed.

00:37:24  5                    Mr. Cantafio, any other recommendations from

00:37:27  6     your office?

00:37:28  7                    THE PROBATION OFFICER:  No, Your Honor.

00:37:29  8                    THE COURT:  Okay.  Do you have any

00:37:31  9     questions, sir?

00:37:32  10                    THE DEFENDANT:  No.

00:37:32  11                    THE COURT:  Okay.  Where are you going to go

00:37:34  12     live when you get out of prison?

00:37:36  13                    THE DEFENDANT:  My aunt.

00:37:39  14                    THE COURT:  Where does she live?

00:37:42  15                    THE DEFENDANT:  At Raleigh.

00:37:43  16                    THE COURT:  In Raleigh?

00:37:44  17                    THE DEFENDANT:  Yes.

00:37:44  18                    THE COURT:  Were you living with her when

00:37:46  19     you were in the riot?

00:37:47  20                    THE DEFENDANT:  No.

00:37:47  21                    THE COURT:  Why not?

00:37:48  22                    THE DEFENDANT:  I was homeless at the time.

00:37:50  23     I wasn't trying to listen to her rules.

00:37:55  24                    THE COURT:  So she kicked you out?

00:37:59  25                    THE DEFENDANT:  Yes, according to my drug

| | | |
|---|---|---|
| 00:38:00 | 1 | use. |
| 00:38:01 | 2 | THE COURT: Does she want you back? |
| 00:38:03 | 3 | THE DEFENDANT: Yes. |
| 00:38:05 | 4 | THE COURT: That's kind. Will you follow |
| 00:38:09 | 5 | her rules this time? |
| 00:38:10 | 6 | THE DEFENDANT: Yes. |
| 00:38:12 | 7 | THE COURT: You see where it gets you if you |
| 00:38:14 | 8 | don't. |
| 00:38:15 | 9 | THE DEFENDANT: Yes, ma'am. |
| 00:38:15 | 10 | THE COURT: It sounds like you need to put |
| 00:38:18 | 11 | her in the corner of the people that want you to |
| 00:38:22 | 12 | succeed. |
| 00:38:24 | 13 | You need to get that GED, right? |
| 00:38:26 | 14 | THE DEFENDANT: Yes. |
| 00:38:29 | 15 | THE COURT: Well, you can appeal if you |
| 00:38:30 | 16 | think something is wrong with the sentence or the |
| 00:38:32 | 17 | conviction, but you've got to move quickly. A defendant |
| 00:38:35 | 18 | doesn't have a lot of time, usually only 14 days from |
| 00:38:40 | 19 | the date that the judgment goes on the docket. If you |
| 00:38:42 | 20 | can't afford the cost of an appeal, you can apply for |
| 00:38:45 | 21 | permission to appeal for free. And if you request, the |
| 00:38:50 | 22 | clerk will fill out the appeal paperwork for you. |
| 00:38:54 | 23 | Now, if you're lucky enough to get into some |
| 00:38:57 | 24 | of these programs that I've recommended you for in |
| 00:39:01 | 25 | prison, are you going to do it? |

| | | |
|---|---|---|
| 00:39:03 | 1 | THE DEFENDANT:  Yes. |
| 00:39:04 | 2 | THE COURT:  Good.  All right. |
| 00:39:08 | 3 | Well, I'll put you back in custody.  Thank |
| 00:39:10 | 4 | you very much. |
| 00:39:12 | 5 | THE DEFENDANT:  Thank you. |
| | 6 | (Concluded at 2:54 p.m.) |
| | 7 | - - - |
| | 8 | |
| | 9 | **C E R T I F I C A T E** |
| | 10 | |
| | 11 | I certify that the foregoing is a correct transcript |
| | 12 | from the record of proceedings in the above-entitled |
| | 13 | matter. |
| | 14 | |
| | 15 | /s/ Tracy L. McGurk_____            ___1/19/2022___ |
| | 16 | Tracy L. McGurk, RMR, CRR                    Date |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |