```
 1              UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF NORTH CAROLINA
 2                     WESTERN DIVISION

 3

 4  UNITED STATES OF AMERICA      )
                                  )
 5     vs.                        )     5:20-cr-341-FL-1
                                  )
 6  RICHARD RUBALACAVA            )

 7

 8

               TRANSCRIPT OF ARRAIGNMENT/PLEA HEARING
 9                  Tuesday, March 23, 2021
                 In Wilmington, North Carolina
10          Before the Honorable Robert B. Jones, Jr.
                      Magistrate Judge
11

12  APPEARANCES OF COUNSEL:

13          For the Government:

14              DANIEL SMITH, Assistant U.S. Attorney
                U.S. Attorney's Office
15              150 Fayetteville Street
                Suite 2100
16              Raleigh, North Carolina 27601

17
            For the Defendant:
18
                EDWARD GRAY, Assistant Federal Public Defender
19              U.S. Federal Public Defender's Office
                150 Fayetteville Street
20              Suite 450
                Raleigh, North Carolina 27601
21

22  Court Reporter:
                        Suzanne G. Patterson, RPR
23                       Contract Court Reporter
                    United States District Court
24                     Raleigh, North Carolina
                    suzannepatterson75@gmail.com
25          Stenotype with computer-aided transcription
```

```
 1                    (Tuesday, March 23, 2021)

 2                   P R O C E E D I N G S

 3                         *   *   *

 4          (Commencing at 9:40 a.m.)

 5          THE COURT:  Good morning, ladies and gentlemen.

 6   This is a session of arraignments in felony criminal court

 7   this morning.  I am United States Magistrate Judge Robert

 8   Jones.  There are six cases on the calendar.  I'd like to

 9   call those counsel to advise me of the status of each case

10   that is called, as well as the anticipated plea in each case

11   that's moving forward this morning.

12                         *   *   *

13          THE COURT:  The next case is Richard Rubalacava,

14   that is case 5:20-cr-341.

15          MR. GRAY:  Good morning, Your Honor.  Mr. Edward

16   Gray for Mr. Rubalacava, he's present in the courtroom.

17   We're prepared to plead guilty pursuant to a plea agreement.

18                         *   *   *

19          (Commencing at 9:42 a.m.)

20          THE COURT:  I'd like to ask each defendant

21   appearing before the Court this morning to listen carefully

22   to the following information.  This information will be an

23   important part of your case.  You may be called upon this

24   morning to make decisions in your cases based on the

25   following.
```

1       You are here because a bill of indictment has been
2  returned against you by the Grand Jury charging you with the
3  violation of one or more federal criminal laws.

4       You have certain rights as relate to these charges
5  and I'm going to explain those rights to you.  As explained
6  to you at your initial appearance, you have the right to
7  remain silent, you have the right to be represented by an
8  attorney, and, if necessary, to have the Court appoint an
9  attorney to represent you in your case, including in a
10 trial.

11      You have a right to trial by jury and at such trial
12 you are presumed to be innocent.  You do not have to prove
13 anything.  Instead, the burden is upon the Government.
14 Through it's attorneys and agents, to prove you guilty by
15 competent evidence and beyond a reasonable doubt.

16      The method for the Government to do this is to call
17 its witnesses who would testify under oath in front of you,
18 in front of a jury and in front of the presiding District
19 Judge.  You, through your lawyer, will then have the right
20 to cross-examine those witnesses and to object to any
21 evidence you deem to be legally improper.

22      You would also have a right to use the subpoena
23 power of this Court to bring to court witnesses who may be
24 favorable to you and to have these witnesses testify under
25 oath.  You also may elect to take the witness stand and

1  testify under oath, but only if you wish to do so.  No one

2  can force you to take the witness stand and testify if you

3  do not want to.  If you choose not to testify, the fact that

4  you do not testify will not be held against you and the

5  District Judge will instruct the jury accordingly.

6          If you plead guilty to an offense this morning, you

7  will waive your right to a trial by jury and the rights that

8  I've just mentioned, other than your right to an attorney.

9          You also have to waive your right not to

10  incriminate yourself because I cannot accept your plea of

11  guilty as to a particular offense or offenses unless you

12  admit in open court your guilt as to that particular offense

13  or offenses.

14          By pleading guilty to a felony offense or being

15  convicted by a jury and adjudicated guilty of the felony

16  offense, you may lose valuable civil rights, such as the

17  right to possess any kind of firearm, the right to serve on

18  a jury, the right to hold public office, and the right to

19  vote.

20          If you plead guilty or are found guilty at trial,

21  you may be ordered to make restitution in money or services

22  to the victims of your crime, if they are identifiable.

23  Certain cases you may be required to forfeit property to the

24  United States Government.

25          If your offense involves fraud, you may be required

1  to provide notice of your conviction to the victims of your

2  crime.

3          In addition, if you are not a United States

4  citizen, if you are convicted, you may be removed from the

5  United States, denied citizenship and denied admission to

6  the United States in the future.

7          As required by the law, a special assessment or

8  monetary amount of $100 for each felony offense or count to

9  which you plead guilty or are found guilty at trial will be

10 imposed against you.  This special assessment of $100 per

11 count will be in addition to and on top of any fines that

12 may also be imposed.

13         You may be given a term of supervised release

14 following any actual term of incarceration that is imposed.

15 Supervised release is similar to what you may know as

16 probation.  The term of supervised release in each

17 individual case can range anywhere from one year up to life

18 based upon your individual criminal history and the offense.

19 Supervised release would require you to report to your

20 assigned probation officer from time to time and to comply

21 with any court-imposed or directed instructions.

22         If you violate supervised release conditions, you

23 may be required to serve an additional time of

24 incarceration.

25         The United States Sentencing Commission has

1   established advisory guideline ranges for all federal

2   crimes.  Although the District Judge is no longer required

3   to specifically follow the guidelines in sentencing you, he

4   or she is required to calculate the advisory guideline for

5   your offense or offenses.  The District Judge will then

6   consider that guideline range, as well as other relevant

7   factors as set forth in Title 18 of the United States Code,

8   Section 3553(a) before imposing sentence.

9          The District Judge has the authority in some

10  circumstances to depart upward or downward from that

11  advisory guideline range.  And the District Judge will also

12  examine other statutory sentencing factors under 18 U.S.

13  Code, Section 3553(a) that may result in a sentence that is

14  greater or lesser than the advisory guideline sentence.

15         If the District Judge imposes a sentence outside

16  the guideline range, he or she is required to explain on the

17  record at the time of sentencing his or her reasons for

18  imposing a sentence outside the guidelines.

19         Under some circumstances you may have the right to

20  appeal your sentence even though you pled guilty to the

21  underlying crime.  However, if you have waived the right to

22  appeal your sentence in a plea agreement with the United

23  States, that agreement may be binding upon you.

24         You should understand that parole has been

25  abolished in the United States court system, so if you

1   receive a sentence which includes an active term of

2   incarceration, you will not be released on parole.

3           Regarding plea agreements, you should know that the

4   Court is not a party to a plea agreement.  It does not

5   participate in the plea agreement negotiations.  However,

6   the Court is obligated to examine carefully any plea

7   agreement with the Government to ensure that it conforms to

8   the objectives of sentencing.  Rule 11 of the Federal Rules

9   of Criminal Procedure applies to the Court's consideration

10  of plea agreements and provides as follows:

11          That in one type of a plea agreement, you or the

12  Government may request or recommend to the Court that a

13  particular sentence or sentencing range is appropriate or

14  that a particular provision of the sentencing guidelines

15  does or does not apply.  Even if the Court accepts this type

16  of a plea agreement, the Court's not required to accept the

17  sentencing recommendation or request and you do not have the

18  right to withdraw your guilty plea if the Court does not

19  follow the sentencing recommendation or request.

20          On the other hand, there may be plea agreements

21  with the Government in which the Government agrees not to

22  bring or will move to dismiss other charges or which you and

23  the Government agree to a specific sentence, sentencing

24  range or the applicability of a particular provision of the

25  sentencing guidelines.  If the Court accepts this type of a

1  plea agreement, then the terms of the plea agreement are
2  binding on the Court and that agreed-upon disposition will
3  be included in the judgment, unless otherwise directed by
4  the plea agreement.

5          However, if the Court does not accept this type of
6  a plea agreement, the defendant will have the opportunity to
7  withdraw his or her plea.

8          If the defendant does not withdraw the plea,
9  however, the Court is not required to follow the plea
10  agreement and may dispose of the case less favorably toward
11  the defendant than the plea agreement had provided.

12          A written presentence report will be prepared by
13  the probation office to assist the District Judge in
14  sentencing.  You'll be asked to give information for this
15  report and you are entitled to have your attorney present
16  during the interview.  It is important that the presentence
17  report be accurate because it will likely determine your
18  punishment range.  After that report has been prepared, you
19  and your attorney will have an opportunity to review the
20  report and to object to any aspects of the report that you
21  believe are inaccurate.

22          Any objections to the presentence report must be
23  made in writing and on a timely basis.  If you do not
24  contest the facts that are set forth in the presentence
25  report and the Court's independent findings coincide with

1 those facts, those facts will be accepted by the Court as

2 correct and the Court will rely upon them in determining the

3 guidelines applicable to your case.

4 If a party seeks to argue for a sentence which

5 varies from the sentencing guidelines, that party shall file

6 written briefings in support of that position and serve a

7 courtesy copy on the probation officer who drafted the

8 presentence report.

9 At the time of sentencing, you and your attorney

10 will have the chance to speak to the Court and to argue for

11 a sentence that you and your attorney feel is appropriate

12 under 18 U.S. Code, Section 3553(a).

13 Judge Flanagan does not allow oral testimony in the

14 nature of character evidence at this sentencing hearing but

15 she'll be happy to receive from your attorney written

16 sentencing briefing or character letters, all of which

17 should be provided to the Court at least one week before the

18 day you are scheduled to be sentenced.

19 Finally, if there are any victims of the offenses

20 for which you are being sentenced, these victims will get a

21 chance to be heard at the sentencing hearing.

22 That concludes your explanation of your rights.

23 Those cases in which a plea of guilty is entered today will

24 be scheduled for a sentencing hearing to be held no sooner

25 than 90 days from today.  Judge Flanagan anticipates those

1  cases to be set for her August term.

2          Each defendant appearing today should notice as I

3  take up your case to hear your plea and to address you

4  personally, you'll be placed under oath and that if you

5  should answer any of my questions falsely, that your answers

6  may later be used against you in another prosecution for

7  perjury or making a false statement.

8          All right.  So let me ask before we get started

9  with Mr. Rubalacava's case, let me ask all the assistant

10 U.S. attorneys here, are there any victims in any of these

11 cases?

12         MR. SMITH:  Your Honor, there are victims in this

13 case, they've been notified but they are not here.

14         THE COURT:  Any other victims?

15         UNIDENTIFIED U.S. ATTORNEY:  No, Your Honor.

16         THE COURT:  All right.  Very good.  We'll begin

17 with Mr. Rubalacava's case, moving on to Mr. McCullers, then

18 to Mr. Wright, and we'll conclude with Mr. McNeill.

19         THE CLERK:  Please stand, sir.

20                       RICHARD RUBALACAVA

21 having been duly affirmed, testified upon his affirmation as

22                          follows:

23         THE COURT:  Mr. Rubalacava, sir, I have in my hand,

24 sir, a document in your case entitled "Consent to Proceed

25 Before a Magistrate Judge."  It looks like you have signed

1  this form, it looks like Mr. Gray has also signed this form.

2  Did you, in fact, sign this form, sir?

3           THE DEFENDANT:  Yes.

4           THE COURT:  And is it your knowing and voluntary

5  desire for the purpose of conducting your arraignment in

6  this case and taking your plea this morning, that I may

7  conduct these proceedings as a United States Magistrate

8  Judge?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Thank you.  Please have a seat.

11          Now, Mr. Rubalacava, sir, do you understand that

12  you are now under oath, if you should answer any of my

13  questions falsely, that your answers may later be used

14  against you in another prosecution for perjury or making a

15  false statement?

16          THE DEFENDANT:  Yes.

17          THE COURT:  What is your full name?

18          THE DEFENDANT:  Richard Rubalacava.

19          THE COURT:  And how old are you?

20          THE DEFENDANT:  26.

21          THE COURT:  How far have you gone in school?

22          THE DEFENDANT:  12th.

23          THE COURT:  Did you graduate from high school?

24          THE DEFENDANT:  No.

25          THE COURT:  Are you able to speak and understand

1  English?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Are you able to read?

4          THE DEFENDANT:  A little bit.

5          THE COURT:  Okay.  Are you currently or have you

6  recently been under the care of a physician or psychiatrist

7  or been hospitalized or treated for narcotics addiction?

8          THE DEFENDANT:  I've been at the hospital for my

9  drug problems.

10          THE COURT:  Okay.  And how recent was that?

11          THE DEFENDANT:  A while.

12          THE COURT:  Within the last year?

13          THE DEFENDANT:  No.

14          THE COURT:  About how long ago was that?

15          THE DEFENDANT:  A couple months after I got

16  arrested.

17          THE COURT:  Mr. Gray, help me out on the timeline

18  here.

19          MR. GRAY:  Yes, Your Honor.  As you know, the

20  indictment notes that he was indicted in June of last year,

21  his approximate last time he's been within a facility for

22  mental health treatment or any other treatment was roughly

23  around February, January of 2019.

24          THE COURT:  Okay.  Mr. Rubalacava, were you

25  diagnosed with any condition, sir?

```
1              THE DEFENDANT:  Bipolar, ADHD, depression.

2              THE COURT:  Okay.  Anything else?

3              THE DEFENDANT:  I'm not too sure.

4              THE COURT:  Are you currently under any kind of

5   medication for that condition?

6              THE DEFENDANT:  Yes.

7              THE COURT:  What medication are you on?

8              THE DEFENDANT:  I'm on Remeron.

9              THE COURT:  Remeron?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Anything else?

12             THE DEFENDANT:  No.

13             THE COURT:  Okay.  And how often do you take that?

14             THE DEFENDANT:  Every day.

15             THE COURT:  Have you taken it today?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Does it affect your ability to

18  understand these proceedings?

19             THE DEFENDANT:  No.

20             THE COURT:  Okay.  So other than the mental

21  hospital, is there any other treatment or hospitalization

22  that you've had recently?

23             THE DEFENDANT:  No.

24             THE COURT:  Have you -- other than the Remeron as

25  you've described, have you taken any other drugs, any other
```

1  medicine, pills or had any alcoholic beverages in the past

2  24 hours?

3          THE DEFENDANT:  No.

4          THE COURT:  Back to your ability to read a little.

5  Do you know what your reading proficiency is?  Do you know

6  what your highest level of reading ability is?

7          THE DEFENDANT:  No.

8          MR. GRAY:  Your Honor, it may advise the Court if I

9  could help explain that a little bit.  His literacy level is

10  that of around a 4th grade level.  The Remeron that he's

11  taking is there to help him focus, it's primarily towards

12  the ADHD.  So it won't have any impact or negative effect as

13  to his understanding.  In fact, it assists in his

14  understanding of what's taking place today.

15          THE COURT:  Okay.  And, Mr. Rubalacava, that's the

16  point of my questioning to you on this, is just for me to

17  make an assessment that you are able to understand these

18  proceedings.  And what you're telling me is that the

19  medication that you take on a daily basis does not affect

20  your ability to understand the hearing this morning; is that

21  correct?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Okay.  Mr. Rubalacava, have you been

24  provided with a copy of the charges against you in this

25  case?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And have you fully discussed those

3  charges, as well as your case in general, with your

4  attorney?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And do you understand it's two charges

7  contained in the indictment.  Do you understand those two

8  charges?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Do you understand what's happening this

11  morning?

12          THE DEFENDANT:  Yes.

13          THE COURT:  All right.  Mr. Gray, have you had any

14  difficulty in communicating with your client or any reason

15  to doubt his mental competency in this case?

16          MR. GRAY:  No, Your Honor.  And if I could just

17  place on the record, there had been a number of continuances

18  in this matter simply so that we can take the time in order

19  for him to understand what is taking place today.  We've

20  reviewed all the documents and due to his literacy range,

21  I've reviewed and read documents to him specifically,

22  reviewed the discovery with him specifically, and he is in a

23  position today where he not only understands what is

24  happening but is willing to move forward.

25          THE COURT:  Okay.  Is that right, Mr. Rubalacava?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Okay.  Does the Government have any

3 reason to doubt Mr. Rubalacava's mental competency in this

4 case?

5           MR. SMITH:  No, Your Honor.

6           THE COURT:  All right.  The Court finds accordingly

7 that Mr. Rubalacava is competent to appear, to understand

8 the nature of these proceedings and to ultimately plead in

9 these matters.

10          Mr. Rubalacava, sir, have you had the time to and

11 have you, in fact, discussed your case with your attorney?

12          THE DEFENDANT:  Yes.

13          THE COURT:  And are you satisfied with Mr. Gray's

14 advice and counsel to you in this case?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Did you hear and understand my

17 explanation of your rights this morning?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Did you understand my general

20 explanation of how you might be sentenced in these cases?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And, Mr. Rubalacava, did you receive a

23 copy of the indictment in this case charging you with two

24 counts?

25          THE DEFENDANT:  Yes.

1   THE COURT:  And do you understand what you're
2 charged with in those two counts?

3   THE DEFENDANT:  Yes.

4   THE COURT:  Do you want me to read those to you out
5 loud or do you waive the reading of the indictment?

6   THE DEFENDANT:  I'll waive the reading of that.

7   THE COURT:  All right.  I am required to remind you
8 of the maximum possible punishment, not the guidelines, but
9 the maximum possible punishment for each of the counts that
10 you face, including any mandatory minimum penalty.

11   Would the Government please remind Mr. Rubalacava
12 as to that information.

13   MR. SMITH:  Yes, Your Honor.  For both Counts One
14 and Two, the maximum penalty on each count is not less than
15 five years and not more than 20 years' imprisonment, a
16 $250,000 fine or both fine and imprisonment, not more than
17 three years of supervised release, not more than two years'
18 imprisonment upon revocation of supervised release, a $100
19 special assessment and restitution, if applicable.

20   THE COURT:  Mr. Gray, were all formal plea offers
21 conveyed to Mr. Rubalacava?

22   MR. GRAY:  Yes, Your Honor, they were.

23   THE COURT:  Mr. Rubalacava, I've been provided an
24 eight-page document in your case, it is entitled Memorandum
25 of Plea Agreement.  It appears to be signed by you.  It

appears from this document that it is your intention to

plead guilty to Count One of the indictment.  Is that your

intention, sir?

THE DEFENDANT:  Yes.

THE COURT:  Did you, in fact, sign this plea

agreement?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Now, let me ask you, sir,

have you had an opportunity to read and to discuss this plea

agreement with your attorney and did you, in fact, do so

before you signed it?

THE DEFENDANT:  Yes.

THE COURT:  Are there any other agreements that you

have with the United States or the U.S. Attorney that are

related to this case other than the plea agreement?

THE DEFENDANT:  No.

THE COURT:  Did you understand the terms, the

language, the words, the sentences, even any legal phrases

that are used in this plea agreement after you discussed it

with Mr. Gray?

THE DEFENDANT:  Yes.

THE COURT:  You understand that by entering into

this plea agreement and entering a plea of guilty, that you

will have waived or given up your right to appeal or to

collaterally attack all or a part of your sentence?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Has anyone made any other or different

3    promises to get you to plead guilty in this case other than

4    what's contained in the plea agreement?

5           THE DEFENDANT:  No.

6           THE COURT:  Has anyone threatened you in any way to

7    persuade you to either accept this plea agreement or to

8    plead guilty in this case?

9           THE DEFENDANT:  No.

10          THE COURT:  Mr. Rubalacava, sir, are you pleading

11   guilty of your own free will because you are, in fact,

12   guilty?

13          THE DEFENDANT:  Yes.

14          THE COURT:  All right.  Now, do you understand that

15   the offense to which you're pleading guilty is a felony

16   offense and that if your plea is accepted by the Court,

17   you'll be found guilty of that offense and that that may

18   deprive you of valuable civil rights such as the right to

19   vote, to hold public office, to serve on a jury and possess

20   a firearm?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Do you understand that if you are not a

23   United States citizen, that your plea of guilty may affect

24   your residency or your status with the immigration

25   authorities?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that if I accept your

3    plea of guilty this morning, that you may not be able to

4    withdraw your plea or have a trial in this case?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Have you answered all my questions

7    truthfully?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you need any more time either to

10   think about your plea or to discuss your case with Mr. Gray

11   before entering your plea?

12         THE DEFENDANT:  No.

13         THE COURT:  How do you plead to Count One of the

14   indictment?

15         THE DEFENDANT:  Guilty.

16         THE COURT:  Okay.  Now, did you, as charged in

17   Count One of the indictment, on or about May the 30th of

18   2020, in the Eastern District of North Carolina, maliciously

19   attempt to damage and destroy by means of fire, personal and

20   real property of the Dollar General Express, located at 149

21   East Davie Street, Raleigh, North Carolina, a business that

22   affects interstate commerce, in violation of 18 U.S. Code,

23   Section 8441.  Did you do all that, sir?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Actually, that may be an 844i.

```
 1        Okay.  If the Government would provide the Court a
 2   factual basis supportive of Mr. Rubalacava's plea of guilty
 3   to Count One of the indictment, telling the Court what the
 4   Government believes it could prove at trial in this case.
 5        MR. SMITH:  At trial, had the case proceeded to
 6   trial, the Government's evidence would show that on May
 7   30th, 2020, during a period of civil unrest in downtown
 8   Raleigh, there were several individuals that began looting
 9   local businesses.  One of those businesses was the Dollar
10   General Express at 149 East Davie Street in downtown
11   Raleigh.  At approximately 11:13 p.m., the Raleigh Fire
12   Department got notification of a fire and responded to that
13   building to find heavy smoke coming out of the -- out of the
14   building.
15        Investigation after the response showed that on
16   video surveillance, the defendant entering the business at
17   approximately 10:19 p.m., he took a bag and started putting
18   several items into that bag.  He then left and he came back
19   in, filled up another bag, left, and came back in, this
20   happened numerous times.  At approximately 11 p.m., the
21   video surveillance showed the defendant then coming back in
22   one last time and setting fire to several items within the
23   store.  He then ran out.  As that fire began to start,
24   approximately four minutes later, the sprinkler system
25   kicked in and sprayed down the fire, essentially stopping
```

1  any other damage that was going to occur from that.

2          Raleigh Police Department, through the use of that

3  surveillance was able to positively identify the defendant.

4  And the Dollar General, in which that was burned on this,

5  their primary distribution center is in South Boston,

6  Virginia, where they receive most of their items to sell.

7  Therefore, they are engaged in interstate commerce.

8          THE COURT:  Mr. Gray, you care to respond to the

9  Government's proffer?

10          MR. GRAY:  No, Your Honor.  Thank you.

11          THE COURT:  Mr. Rubalacava, sir, did you hear and

12  understand the description of the criminal conduct that the

13  prosecutor has provided to the Court?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you dispute anything that he's told

16  me?

17          THE DEFENDANT:  No.

18          THE COURT:  Very good.  The Court is satisfied with

19  the responses given during this hearing and makes the

20  following findings:  It is the finding of this Court that in

21  the case of the United States of America versus Richard

22  Rubalacava, Case:  5:20-cr-341, that Mr. Rubalacava is fully

23  competent and capable of entering an informed plea.  He's

24  pled guilty to Count One of the indictment, as being made

25  knowing and voluntarily and is supported by an individual

1  factual basis, containing each of the elements of the

2  offense charged therein.  Mr. Rubalacava's plea is,

3  therefore, accepted and he's hereby adjudged guilty of Count

4  One of the indictment.

5          And the Court hereby conditionally approves the

6  parties' plea agreement in this case.

7          The parties will be notified in writing of the date

8  and place of sentencing in this matter.  It is anticipated

9  the sentencing will be scheduled before Judge Flanagan at

10 her August term of Court.

11         Defense counsel is directed to contact probation to

12 arrange a time for commencement and preparation of

13 Mr. Rubalacava's PSR in this case.

14         Mr. Gray, anything further on behalf of your

15 client?

16         MR. GRAY:  No, Your Honor.  Thank you.

17         THE COURT:  Anything from the Government?

18         MR. SMITH:  No, Your Honor.  Thank you.

19         THE COURT:  All right.  Thank you very much.

20         (The foregoing proceedings concluded at 10:11 a.m.)

21

22

23

24

25

```
 1                    CERTIFICATE OF REPORTER

 2   NORTH CAROLINA - HARNETT COUNTY:

 3        I, Suzanne G. Patterson, RPR, contract court reporter

 4   for the United States District Court for the Eastern

 5   District of North Carolina, do hereby certify that pursuant

 6   to Section 753, Title 28, United States Code, that the

 7   foregoing is a true and accurate transcript of my

 8   stenographically reported proceedings held in the

 9   above-entitled matter and that the transcript page format is

10   in conformance with the regulations of the Judicial

11   Conference of the United States.

12

13        Dated this 14th day of February, 2022.

14

15                            /s/ Suzanne G. Patterson
                              Suzanne G. Patterson
16                            Registered Professional Reporter
                              Contract Court Reporter
17                            United States District Court

18

19

20

21

22

23

24

25
```